UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CSX Transportation, Inc.**<br>    500 Water Street<br>    Jacksonville, FL 32202<br><br>                    **Plaintiff,**<br><br>        v.<br><br>**Mayor and City Council of Baltimore**<br>    s/o James L. Shea, City Solicitor<br>    100 N. Holliday Street<br>    Suite 101<br>    Baltimore, MD 21202<br><br>    **and**<br><br>**Maryland Transit Administration**<br>    s/o Holly Arnold, Administrator<br>    6 Saint Paul Street<br>    Suite 1200<br>    Baltimore, MD 21202<br><br>                    **Defendants.** | **CASE NO**: 1:22-cv-1655 |

## COMPLAINT

Plaintiff CSX Transportation, Inc. ("CSX"), by and through its attorneys, files this Complaint against defendants, Mayor and City Council of Baltimore (the "City"), and Maryland Transit Administration ("MTA") in support thereof, avers as follows:

## PARTIES

1. CSX is a corporation incorporated pursuant to the laws of Commonwealth of Virginia and has its principal place of business located in Jacksonville, Florida.

2. The City is a municipal corporation organized pursuant to the Maryland Constitution with a principal place of business located in Baltimore, Maryland.

3. MTA is a mass transit administration operated by the Maryland Department of Transportation with a principal place of business located in Baltimore, Maryland.

## JURISDICTION

4. Jurisdiction is based upon 28 U.S.C § 1332 as the plaintiff and defendants are citizens of different states, and the amount at issue exceeds jurisdictional requirements.

## VENUE

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this judicial district.

## PREDICATE FACTS

6. CSX operates as an interstate state rail carrier that owns and maintains land, railroad tracks, rights of way, and other improvements throughout the United States, including in Baltimore, Maryland.

7. CSX owns and operates the railroad tunnel in Baltimore, Maryland known as the Howard Street Tunnel (the "Tunnel").

8. The Tunnel runs for approximately two miles generally underneath Howard Street beginning near West Mount Royal Avenue in the north and ending south of Conway Street.

9. MTA operates a light rail passenger railway on the surface above the Tunnel (the "Light Rail").

10. The Light Rail is a mode of transportation involving passenger rail cars on fixed rails and driven electrically with power supplied by overhead electric lines, which in turn power the rail cars.

11. Stray electrical current from light rail systems has been a historical problem in cities due to the corrosive effect stray currents have on surrounding infrastructure and underground utilities.

12. MTA has knowledge of stray currents discharging from the Light Rail and effecting infrastructure and underground utilities in Baltimore, Maryland.

13. MTA is responsible for monitoring electrical current from the Light Rail and installing protective devices to ensure no stray current leaks or discharges from the rails to the ground.

14. The City maintains and operates a water main and/or water mains located above and/or adjacent to the Tunnel and below the Light Rail (singularly, "Water Main," plurally, "Water Mains").

15. Upon information and belief, the Water Mains were installed in the 19th Century and never replaced, despite their aged condition.

16. The City is responsible for monitoring the Water Mains and ensuring the pipes are not degrading, defective, and/or failing such that the Water Mains could damage the personal and real property of individuals and/or entities within Baltimore.

17. The City is responsible for optimizing the service life of the City's sewer and water linear infrastructure by developing and implementing proactive inspection and maintenance programs.

18. The City engages in inspection and maintenance programs include the monitoring of the physical, chemical, and metallurgical impact that surrounding systems, such as the Light Rail, have on the City's water infrastructure, including the Water Main, and potential impacts the

degradation of the City's own infrastructure could have on surrounding personal and/or real property.

19. On or about the morning of July 8, 2019, the Water Main ruptured and massive amounts of water discharged from the City's pipes into the Tunnel.

20. The water from the City's Water Main flooded CSX's tracks in the Tunnel at or near milepost BAK 96 (the "July 2019 Flood").

21. Prior to the July 2019 Flood, the City knew or reasonably should have known about other incidents in which Water Mains owned and maintained by the City ruptured at different locations and discharged water into the Tunnel.

22. Prior to the July 2019 Flood, MTA knew or reasonably should have known that stray current was being emitted from the Light Rail.

23. The City and MTA, respectively, had a responsibility to inspect, repair, and monitor their infrastructure.

24. The City and MTA each were concerned that corrosion caused by stray electrical current emitted from the Light Rail was corroding or otherwise impairing the Water Mains.

25. Upon information and belief, the City and MTA previously agreed that each would install cathodic protection devices on their equipment and continue to study the corrosive effects of stray current emanating from the Light Rail and entering the ground from the track.

26. The City installed monitoring devices to detect stray current from the Light Rail.

27. Prior to the July 2019 Flood, the City was aware of the need to perform annual surveys to evaluate the level of stray current occurring at test stations where monitoring devices were installed to protect the City's infrastructure, including the Water Mains.

28. Upon information and belief, despite having knowledge that stray current was being emitted by the Light Rail which could corrode or otherwise impair the Water Mains, neither the City nor MTA took affirmative steps to control the stray current or mitigate its entry into the ground and/or buried infrastructure before the July 2019 Flood.

29. Prior to the July 2019 Flood, CSX informed the City that water from the City's Water Mains was leaking into the Tunnel.

30. CSX continued to raise its concerns to the City as the leaks continued to expand and discharge more water into the Tunnel prior to the Water Main failure on July 8, 2019.

31. As a result, the City and CSX conducted a joint inspection of the Tunnel and City representatives personally observed the leaking Water Mains.

32. Despite personally observing the leaking Water Mains, the City did not perform any repair work on the Water Main, or even inspect it, to prevent the July 2019 Flood.

33. Due to the water from the Water Main inundating the Tunnel, a CSX train traveling on CSX's tracks in the Tunnel on July 8, 2019 suffered a derailment.

34. MTA was aware of the Water Main break that caused the July 2019 Flood in the Tunnel, but MTA continued to operate the Light Rail line above the Tunnel.

35. MTA did not consider whether the continued operation of the Light Rail could cause further damage to underground infrastructure and the Tunnel.

36. Upon information and belief, MTA failed to confer with CSX or the City about whether it was safe for MTA to operate the Light Rail above the flooded Tunnel or if continued operation of the Light Rail could cause further damage to utilities and other infrastructure affected by the subsurface Water Main break.

37. In or about the afternoon of July 8, 2019, a vault owned by MTA at West Pratt Street, adjacent to the Light Rail and above the Tunnel (the "Vault") collapsed, sending additional debris into the Tunnel.

38. As a result of the actions of the City and MTA, CSX incurred significant property damage and costs to remediate the damage to its property, including replacing/repairing its track structure and equipment as well as taking corrective and preventive measures to ensure the safe flow of traffic through the Tunnel.

## COUNT I: Negligence
### (the City)

39. CSX incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth at length herein.

40. The City owned and maintained all of the Water Mains above or adjacent to the Tunnel that ruptured and caused damage.

41. The City is responsible for properly inspecting and/or maintaining the sewer and water linear infrastructure system in Baltimore, Maryland.

42. The City owed a duty of care to property owners, such as CSX, to properly inspect, maintain, and/or take adequate measures to prevent the discharge of water and debris so as not to cause damage to property.

43. The City was negligent in inspecting and maintaining the Water Mains and allowed them to fall into a state of disrepair such that a dangerous condition was created.

44. Due to prior Water Main breaks flooding the Tunnel, and the City's own assertions that the Light Rail was degrading the Water Mains, the City had actual and/or constructive notice of the condition of the aging, decrepit, and crumbling Water Mains, and the dangerous condition resulting from their state of disrepair.

45. Prior Water Main breaks at or near the Tunnel placed or reasonably should have placed the City on notice of the need for immediate repair and replacement of the Water Mains.

46. Following prior Water Main breaks, and prior to the July 2019 Flood, the City could have, or should have, adequately inspected, maintained, and made necessary repairs to the dangerous condition of the defective Water Mains.

47. The City also should have known based upon its own records that the Water Mains were approaching the end of and/or passed their expected useful life, and arrangements should have already been made to replace those Water Mains.

48. The City had a duty to maintain and replace these aging Water Mains, but negligently failed to repair or replace the Water Mains such that a dangerous condition existed; the City had notice of that condition, and the City failed to remedy that condition.

49. The City's failure to adequately maintain or replace the Water Mains constituted negligence and directly caused and resulted in the flooding of the Tunnel.

50. The City also had a duty to maintain and protect the Water Mains from the stray current emitted by the Light Rail of which the City had notice and failed to remedy the condition such that a dangerous condition existed.

51. The City's failure to adequately protect the Water Mains from the stray current emitted by the Light Rail constituted negligence and directly caused and resulted in the flooding of the Tunnel.

52. As the result of the flooding from the July 8, 2019 Water Main break, CSX sustained damages in an amount not less than $2,577,134.84.

53. CSX submitted a claim to the City for the damages caused by the July 2019 Flood.

54. The City acknowledged receipt of CSX's claim for the damages caused by the July 2019 Flood, and denied the claim.

55. Despite this claim submission, the City refused and/or failed to pay CSX for its damages.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Mayor and City Council of Baltimore, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT II: Negligence
### (MTA)

56. CSX incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth at length herein.

57. MTA owed a duty of care to neighboring property owners, such as CSX and the City, to maintain the Light Rail in a reasonably working order and use the land in a way that would not cause damage to surrounding properties.

58. When MTA constructed the Light Rail, and no later than 2001, MTA was on notice that the Light Rail emitted stray current into the ground containing the Water Mains.

59. Although the Light Rail was known to emit stray current, which was degrading the Water Mains, MTA failed to take any corrective action to protect the Water Mains from the stay current emissions, leaving the Water Mains susceptible to rupturing and the Tunnel exposed to flooding.

60. MTA failed to take any action to prevent the Stray Current from damaging the Water Mains and underground infrastructure despite the reasonable foreseeability that the stray current emitted by the Light Rail would cause the Water Mains to fail and flood the Tunnel.

61. MTA breached its duty by failing to prevent the Light Rail from emitting stray current and taking other measures to protect the Water Mains from the emissions of the stray current.

62. After the initial flooding of the Tunnel on July 8, 2019, MTA was on notice to cease operating the Light Rail in the area of the Tunnel due to the dangerous conditions that lead to the flooding of the Tunnel.

63. However, MTA continued operating the Light Rail over the Tunnel for over seven hours after the initial flooding of the Tunnel.

64. The continued operation of the Light Rail degraded the integrity of the support for the Vault.

65. MTA's continued operation of the Light Rail and the degradation of the support for the Vault, coupled with the subsidence caused by the Water Main break, caused the Vault to collapse.

66. The collapse of the Vault sent additional debris into the Tunnel, further damaging CSX's property.

67. MTA had a duty to cease operations of the Light Rail once it knew that a Water Main broke, flooding the Tunnel.

68. MTA failed to cease operating the Light Rail in breach of its duty.

69. In addition, MTA failed to install adequate cathodic protection devices to prevent the emission of stray current from the Light Rail system into the ground to the detriment of underground infrastructure.

70. As a direct and proximate cause of MTA's breach of its duties, CSX was damaged in an amount not less than $2,577,134.84 resulting from the July 2019 Flood.

71. CSX submitted a claim to MTA for the damages caused by the July 2019 Flood.

72. Despite this claim submission, MTA failed to respond and/or pay CSX for its damages.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Maryland Transit Administration, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT III: Trespass (in the Alternative)
### (the City)

73. CSX incorporates by reference all allegations set forth in paragraphs 1 through 38 above as if fully set forth at length herein.

74. The release of water and debris from the Water Main and into the Tunnel substantially interfered with CSX's possessory interests in the Tunnel.

75. Because of the July 2019 Flood, CSX was not able to occupy the Tunnel until the Tunnel could be repaired and remediated.

76. The release of water and debris from the Water Main into the Tunnel was caused by the City's pumping and directing of water through pipes it knew were leaking into the Tunnel before the July 2019 Flood.

77. CSX did not consent to the release of water and debris from the Water Main into the Tunnel.

78. As a direct and proximate result, CSX was damaged in an amount not less than $2,577,134.84.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Mayor and City Council of Baltimore, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

### **COUNT IV: Trespass (in the Alternative)**
### **(MTA)**

79.     CSX incorporates by reference all allegations set forth in paragraphs 1 through 38 above as if fully set forth at length herein.

80.     MTA emitted stray currents from the Light Rail which caused the July 2019 Flood.

81.     After the July 2019 Flood began, MTA continued operating its Light Rail causing its Vault and associated debris to enter the Tunnel.

82.     As a result of MTA's emission of stray currents and the collapse of MTA's Vault into the Tunnel, CSX was not able to occupy the Tunnel until the Tunnel could be repaired and remediated.

83.     CSX did not consent to MTA's emission of stray currents from the Light Rail.

84.     CSX did not consent to MTA's Vault and debris entering the Tunnel.

85.     As a direct and proximate result, CSX was damaged in an amount not less than $2,577,134.84.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Maryland Transit Administration, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

### **COUNT V: Nuisance (in the Alternative)**
### **(the City)**

86.     CSX incorporates by reference all allegations set forth in paragraphs 1 through 38 above as if fully set forth at length herein.

87.     The release of water and debris from the Water Main and into the Tunnel unreasonably and substantially interfered with CSX's use and enjoyment of the Tunnel.

88. Because of the July 2019 Flood, CSX could not use the Tunnel for interstate rail transportation until the Tunnel could be repaired and remediated.

89. The release of water and debris from the Water Main into the Tunnel was caused by the City's pumping and directing of water through pipes it knew were leaking into the Tunnel before the July 2019 Flood.

90. As a direct and proximate result, CSX was damaged in an amount not less than $2,577,134.84.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Mayor and City Council of Baltimore, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

### COUNT VI: Nuisance (in the Alternative)
### (MTA)

91. CSX incorporates by reference all allegations set forth in paragraphs 1 through 38 above as if fully set forth at length herein.

92. MTA emitted stray currents from the Light Rail which caused the July 2019 Flood.

93. After the July 2019 Flood began, MTA continued operating its Light Rail causing its Vault and associated debris to enter the Tunnel.

94. MTA's emission of stray currents and continued operation of the Light Rail on July 8, 2019 after the July 2019 Flood unreasonably and substantially interfered with CSX's use and enjoyment of the Tunnel.

95. Because of the July 2019 Flood and collapse of the Vault, CSX could not use the Tunnel for interstate rail transportation until the Tunnel could be repaired and remediated.

96. As a direct and proximate result, CSX was damaged in an amount not less than $2,577,134.84.

**WHEREFORE**, Plaintiff, CSX Transportation, Inc., demands judgment in its favor and against defendant, Maryland Transit Administration, in the amount of $2,577,134.84, together with interest, costs, and such other relief as the Court deems just and proper.

                                      Respectfully submitted,

                                      **COHEN & PALOMBO P.C.**

By:   /s/ Jeffrey D. Cohen
        Jeffrey D. Cohen (D. Md. Bar No. 24260)
        Timothy L. Frey (D. Md. Bar No. 18498)
        125 Coulter Ave., Suite 1000
        Ardmore, PA 19003
        Phone: (215) 609-1110
        Facsimile: (215) 609-1117
        Email: jcohen@freightlaw.net
        Email:  tfrey@freightlaw.net

Date: July 6, 2022

                                      *Attorneys for Plaintiff,*
                                      *CSX Transportation, Inc.*